Andrew C. Brassey (ISB No. 2128)
John M. Howell (ISB No. 6234)
BRASSEY, WETHERELL, CRAWFORD & GARRETT
203 W. Main Street
P.O. Box 1009
Boise, Idaho 83701-1009
Telephone: (208) 344-7300
Facsimile: (208) 344-7077

Attorneys for Defendants Thomas Beauclair,
     Sharon Lamm, and Ofelia Alvarado

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LESLIE PETER BOWCUT, #68175, | |
| Plaintiff, | Case No. CV-06-208-S-BLW |
| vs. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), F.R.C.P.** |
| IDAHO STATE BOARD OF CORRECTION, THOMAS BEAUCLAIR, SHARON LAMM, OFELIA ALVARADO, | |
| Defendants. | |

COME NOW Defendants Thomas Beauclair, Sharon Lamm, and Ofelia Alvarado (collectively referred to as "these Defendants"), by and through their counsel of record, Brassey, Wetherell, Crawford & Garrett, and, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, submit the following Memorandum in Support of Motion to Dismiss.

# I.  INTRODUCTION

In March 2006, Plaintiff Leslie Peter Bowcut, along with a number of other Idaho inmates, were transferred to the Newton County Correctional Center ("NCCC") in Newton, Texas.  The transfer of inmates took place pursuant to a March 10, 2006, agreement between the State of Idaho, the GEO Group, Inc., and Newton County, Texas.  The parties entered into the agreement due to the recent Idaho federal court decision in *Balla v. Idaho Board of Correction, et al.*, which denied the State of Idaho Department of Correction's motion to terminate the federal court's 1987 injunction placing a population cap in certain Idaho State Correctional Institute units.  2005 WL 2403817 (D. Idaho 2005).  Beginning in July 2006, the Idaho inmates, including Plaintiff, were transferred from the NCCC to the Bill Clayton Detention Center and the Dickens County Correctional Center, both of which are located near Lubbock, Texas.  Plaintiff and other Idaho inmates have since been transferred back to Idaho.  Plaintiff is currently housed at a prison located near Boise, Idaho.

Plaintiff has filed suit under 42 U.S.C. § 1983.  Plaintiff alleges that he has been subjected to various unconstitutional prison conditions while housed at NCCC.  Each of Plaintiff's claims will be addressed in turn.  In summary, Plaintiff's Complaint fails to state a claim upon which relief can be granted and, therefore, the Complaint must be dismissed.[1]

# II.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys ., Inc.,* 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court will not accept legal conclusions as true merely because

---

[1]It should be noted that while the Idaho State Board of Correction is a named Defendant, this Court has previously held that the Plaintiff may proceed only against the individual Defendants. *See* Order dated June 21, 2006 (Docket No. 6).

they are presented in the form of factual allegations in Plaintiff's Complaint. *See Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994). Plaintiff must plead more than just assertions or conclusions of law; rather he must show some facts that would tend to support his claim. *See Ove v. Gwinn,* 264 F.3d 817, 821 (9th Cir. 2001) (stating that "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss"). Dismissal of a claim pursuant to Rule 12(b)(6) is proper where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, (1957); *see also Hicks v. Small,* 69 F.3d 967, 969 (9th Cir. 1995).

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *See Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991).

### III. ARGUMENT & AUTHORITY

**A.     Plaintiff's Eighth and Fourteen Amendment Claims for Damages Against These Defendants Should Be Dismissed as a Matter of Law.**

As a prisoner incarcerated under a criminal conviction, Plaintiff's principle substantive rights are guaranteed by the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Ingraham v. Wright,* 430 U.S. 651, 664 (1977). The Eighth Amendment is the embodiment of a constitutional limitation on the power of the states to punish individuals convicted of a crime. Punishment cannot be "barbarous," nor can it contravene society's "evolving standards of decency." *Rhodes v. Chapman,* 452 U.S. 337, 346 (1958). The Eighth Amendment, however, is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id.* at 348. The federal courts may not intervene "to remedy conditions that are merely unpleasant or undesirable." *Neal v. Miller*, 778 F. Supp. 378 (W.D. Mich. 1991).

The Equal Protection Clause of the Fourteenth Amendment, on the other hand, mandates that similarly situated persons be treated alike absent a rational basis for doing otherwise. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing equal protection claim where plaintiff alleged that he was intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment).

1.      **The Alleged "Transfer" Policy is Constitutionally Valid.**

Plaintiff's claim for damages against these Defendants must be viewed in light of the Supreme Court's admonition to accord prison officials "wide ranging deference in the adaptation and execution of policies and practices to further institutional order and security." *Whitley v. Albers*, 475 U.S. 321, 322 (1986). Plaintiff alleges that each of the individual Defendants was "instrumental in creating policy" that violated his civil rights. Complaint, pp. 1-2. Plaintiff further claims that the Idaho Department of Correction "shirked" its responsibility by failing to provide him with a similar degree of custody, protection, care, and discipline" than an inmate receives in Idaho. *Id.* at p. 4. Although Plaintiff claims that the individual Defendants were instrumental in implementing a policy that resulted in the violation of his Eighth and Fourteen Amendment rights, *id.* at p. 6, he fails to assert with any specificity their involvement. Moreover, Plaintiff does not set forth how the individual Defendants violated his rights; rather, Plaintiff alleges that the Idaho Department of Correction sent some unnamed "prison official" to tour the NCCC and, as a result, the Department of Correction (and presumably the individual Defendants) was aware of the facility's "cramped and sub-standard environment." *Id.*

Notably, these Defendants can only be liable for their own actions or omissions because there is no *respondeat superior* liability in a § 1983 action. *See Hansen v. Black*, 885 F.2d 642, 646 (9th

Cir. 1989). As a result, an individual can only be liable for implementing a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Id.* Thus, even if the Court draws all inferences in the Plaintiff's favor[2] and assumes that the individual Defendants had exclusive control over the creation and  implementation of the "policy" of transferring the Idaho inmates to the NCCC, these Defendants cannot be liable because the transfer "policy" at issue was constitutionally valid.

The transfer "policy" which Plaintiff alleges violated his civil rights results from the agreement between the State of Idaho, Newton County, Texas, and the GEO Group, Inc. The parties executed the agreement pursuant to Idaho Code § 20-241A, which expressly allows the State of Idaho to:

> enter into an agreement with the proper authorities of the United States, another state, a political subdivision of this state or another state, or a private prison contractor, to provide for the safekeeping, care, subsistence, proper government, discipline, and to provide programs for the reformation, rehabilitation, and treatment of prisoners.

Idaho Code § 20-241A(1). The agreement was precipitated by the ruling in *Balla*, which upheld the 1987 injunction consisting of a population cap in certain Idaho State Correctional Institute units. 2005 WL 2403817 at *11-12. The transfer "policy" of which Plaintiff complains is thus expressly provided for by Idaho law and is the result of the State of Idaho's compliance with the court's order in *Balla.*

---

[2]As noted in the standard of review, the Court should not simply accept these allegations as true. *See Clegg*, 18 F.3d at 754-55. Plaintiff must plead more than just assertions or conclusions of law; rather he must show some facts that would tend to support his claim. *See Ove*, 264 F.3d at 821 (stating that "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss").

Moreover, as further explained below, Plaintiff has no constitutional right to remain in an Idaho prison. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). In *Olim*, the Supreme Court stated, "it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State." *Id.* at 247. The transfer "policy" at issue thus lies squarely within the constitutional limits established by the Court. As a result, Plaintiff's Eighth and Fourteenth Amendment claims against these Defendants for their alleged role in implementing the "policy" of transferring Plaintiff to the NCCC should be dismissed as a matter of law.

### 2.    Plaintiff Was Not Treated Differently than Similarly Situated Inmates in Texas.

As noted above, the Fourteenth Amendment requires that similarly situated persons be treated alike absent a rational basis for doing otherwise. *See City of Cleburne*, 473 U.S. at 440. Numerous courts have held that, for purposes of equal protection, inmates transferred pursuant to an interstate compact are similarly situated to inmates in the receiving state. *See, e.g., Stewart v. McManus*, 924 F.2d 138, 142 (8th Cir. 1991) (rejecting plaintiff's argument that class at issue consisted of all Kansas inmates and that all Kansas inmates were to be treated similarly whether housed in Kansas or Iowa); *Johnson v. Barry*, 815 F.2d 1119, 1121 (7th Cir. 1987) (applying disciplinary rules of transferee prison to transferred inmate did not violate inmate's equal protection rights); *Leslie v. Wisconsin Dep't of Corrections*, 2000 WL 689185, *3 (7th Cir. 2000) (fact that plaintiffs were not given the same treatment as similarly situated inmates in sending state was irrelevant for purposes of equal protection analysis). The underlying basis for decisions such as *Stewart*, *Johnson*, and *Leslie* is found in the language of the Interstate Corrections Compact ("ICC") which provides that inmates

confined pursuant to its provisions "shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution." *See, e.g.*, Idaho Code § 20-701.

Plaintiff does not complain that the conditions at NCCC are different for Texas and Idaho inmates. Instead, he alleges that he, along with the other Idaho inmates housed at NCCC, were not treated fairly to other, similarly situated inmates <u>in Idaho</u>. *See* Complaint, p. 4 ("my complaint is that they have shirked their responsibility by not providing a similar degree of custody, protection, care and discipline <u>that inmates receive in Idaho</u>.") (emphasis added). Utilizing the same analysis as the courts in cases such as *Stewart*, *Johnson*, and *Leslie*, requires that Plaintiff's equal protection claim be dismissed as a matter of law on the grounds that there is no allegation or evidence that Plaintiff - an Idaho inmate - was treated differently than other inmates from Texas (or other states) while incarcerated at NCCC.

### 3.    Plaintiff Has No Constitutionally Protected Right to Remain in an Idaho Prison.

Plaintiff alleges that as a result of his transfer from Idaho to NCCC, these Defendants "shirked their responsibility by not providing a similar degree of custody, protection, care, and discipline that inmates receive in Idaho." *Id.* Plaintiff's Eighth and Fourteenth Amendment claims, to the extent they rely on any underlying due process analysis, should be dismissed.

The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law. The inquiry in this case is whether the transfer to NCCC implicated a "liberty interest." It is well settled, however, that the decision on where to place inmates within a correctional system is a matter of discretion for prison officials.

The Constitution "does not mandate comfortable prisons ...." *Rhodes*, 452 U.S. at 349. Indeed, the fact that "life in one prison is much more disagreeable than in another does not itself

signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

In *Olim*, a case discussed above, a Hawaii prisoner, who had been transferred to a prison in California, brought an action for denial of his Fourteenth Amendment due process rights. 461 U.S. 238 (1983). The Supreme Court held that, just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a state, "he has no justifiable expectation that he will be incarcerated in any particular State." *Id.* at 245. In reversing the Ninth Circuit Court of Appeals, the Supreme Court noted as follows:

> In short, it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State. Confinement in another State, unlike confinement in a mental institution, is "within the normal limits or range of custody which the conviction has authorized the State to impose." Even when, as here, the transfer involves long distances and an ocean crossing, the confinement remains within constitutional limits.

*Id.* at 247. As the *Olim* decision indicates, to the extent Plaintiff's due process claim is based on his transfer to a prison outside of Idaho, that claim must be dismissed as a matter of law.

**4.    There Exists No Connection Between Plaintiff's Claims and These Defendants.**

Plaintiff fails to proffer any connection between these Defendants and the alleged constitutional violations. Such a failure is fatal to a cause of action against these Defendants. *See, e.g., Hansen*, 885 F.2d at 646 (there exists no *respondeat superior* liability in a § 1983 action); *see also, Ledbetter v. City of Topeka, Kansas,* 318 F.3d 1183, 1187 (10th Cir. 2003) (under § 1983, a defendant may not be held liable under a theory of *respondeat superior*; plaintiff must show an affirmative link between constitutional deprivation and either the defendant's personal participation, his exercise of control or direction, or his failure to supervise). Moreover, Plaintiff's claims are

based upon the conditions that existed at the Texas facility and, as such, can only be addressed by Texas officials, not Idaho officials. *See Garcia v. Lemaster*, 439 F.3d 1215, 1218 (10th Cir. 2006) (Prisoner from New Mexico, the sending state, brought claims against New Mexico officials regarding his treatment in a California prison, the receiving state, based upon administrative segregation, security classification, and denial of recreation. Court held that the plaintiff's grievances can only be addressed by California officials, not New Mexico officials, and therefore dismissed the claims.). Even when considering the allegations in a light most favorable to the Plaintiff, there is nothing to suggest that these Defendants were personally involved in the claims alleged by Plaintiff. Absent a connection between these Defendants and the alleged constitutional violations, these Defendants must be dismissed as a matter of law.

5.     **Plaintiff Cannot Bring a Claim on Behalf of Other Inmates.**

Throughout his Complaint, Plaintiff raises allegations concerning other inmates. Plaintiff seeks injunctive relief on behalf of these other inmates and further seeks certification of a class of all inmates at NCCC who are subject to Idaho's jurisdiction. Plaintiff is proceeding in this action *pro se*. A nonlawyer inmate may not proceed in federal court on behalf of fellow inmates. *See Massimo v. Henderson,* 468 F.2d 1209, 1210 (5th Cir. 1972) (affirming dismissal of the portion of petitioner's complaint seeking relief on behalf of fellow inmates). Similarly, an imprisoned *pro se* litigant who is unassisted by counsel may not represent his fellow inmates in a class action. *See Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975). Therefore, the portions of Plaintiff's Complaint seeking relief on behalf of others must be dismissed.

6.     **Plaintiff's Individual Claims Are Legally Insufficient.**

As noted above, Plaintiff does not allege that he, nor the other Idaho inmates that were housed at the NCCC, were treated differently than similarly situated inmates from Texas (or any

other state). Plaintiff instead contends that, as a result of the transfer, he and the other Idaho inmates have been denied certain privileges and opportunities that were available to Idaho inmates if housed in an Idaho prison. Moreover, there exists no connection that these Defendants caused or contributed to Plaintiff's alleged damages. Nonetheless, each of Plaintiff's claims will be discussed in turn.

        **a.**        **Telephone Access.**

Plaintiff alleges that it costs too much money to place long distance phone calls from NCCC. *See* Complaint, p. 7. Only unreasonable restrictions on telephone access may violate a prisoner's constitutionally protected rights. *See Johnson v. State of Cal.*, 207 F.3d 650, 656 (9th Cir. 2000) ("Although prisoners have a First Amendment right to telephone access, this right is subject to reasonable limitations arising from the legitimate penological and administrative interests of the prison system.") (citation omitted). In *Johnson*, the plaintiff prisoner made a similar claim and alleged that the prison overcharged for telephone use. The Ninth Circuit upheld the district court's dismissal of this claim noting, "There is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls and the complaint alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether." *Id.*

Here, there is no allegation that Plaintiff was ever denied telephone access or that the charges were so exorbitant as to deprive prisoners of phone access altogether. In addition, there is no allegation that Plaintiff, or any other Idaho inmate, was charged more for a telephone call than an inmate from Texas or any other state. Therefore, Plaintiff has failed to allege a valid constitutional claim and this claim must be dismissed as a matter of law.

### b.    Visitation.

Plaintiff claims that his transfer from Idaho to Texas resulted in a constitutional violation of his right to visitation. *See* Complaint, p. 7. As noted in by the U.S. Supreme Court in *Overton v. Bazzetta*, "[t]he very object of prison is confinement." 539 U.S. 126, 131 (2003). As a result, "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Id.* As the Supreme Court decisions regarding prison visitation have established, "freedom of association is among the rights least compatible with incarceration." *Id.* Plaintiff does not assert that his visitation rights were terminated; rather, Plaintiff claims that, as a result of his transfer to NCCC, his relatives are no longer able to effectively visit him because he is in Texas. As discussed above, however, Plaintiff has no justifiable expectation that he would serve the entire term of his sentence in Idaho. Plaintiff has failed to alleged a valid constitutional violation and this aspect of his claim must be dismissed as a matter of law.

### c.    Cell Occupancy & Living Conditions.

Plaintiff alleges, *inter alia*, that NCCC is overcrowded and is not a healthy place to live. *See* Complaint, pp. 8-10. However, the Constitution does not mandate comfortable prisons. *See Rhodes*, 452 U.S. at 349, 101 S.Ct. at 2400. Further, "mere inconvenience or unpleasantness will not support a constitutional claim." *Douglas v. Debruyn*, 936 F.Supp. 572 (S.D. Ind. 1996). Plaintiff does not claim that he has been forced to share a bed or that a bed was not provided. He also does not claim that he was totally deprived of space where he could store his personal affects. Instead, Plaintiff claims only that at NCCC he did not have as much personal space compared to another facility.

Additionally, Plaintiff claims that the tight living quarters creates safety issues with the inmates. *See* Complaint, p. 8. "A nexus between overcrowding and creating conditions in which

there is a failure to protect inmates is not made by a single instance in which there is a violent confrontation in which there happened to be too few guards and too many prisoners." *Williams v. Willits*, 853 F.2d 586 (8th Cir. 1988). Here, Plaintiff fails to allege any instances where he was subject to violence due to the conditions at NCCC. Plaintiff's allegations are insufficient to raise to the level of a constant threat of violence or substantial risk of serious harm. *See, e.g., Purcell ex rel. Estate of Morgan v. Toombs County, Ga*, 400 F.3d 1313, 1321 (11th Cir. 2005).

Further, Plaintiff claims that his cell was inadequately cooled and heated. *See* Complaint, p. 11. "While the temperature in [plaintiff's cell] may be uncomfortable, that alone cannot support a finding that the plaintiff was subject to cruel and unusual punishment in violation of the Eighth Amendment." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).

Plaintiff's complaints are nothing more than personal inconveniences that fail to raise a valid constitutional claim and thus should be dismissed as a matter of law.

### d.   Commissary Privileges.

Plaintiff alleges that the cost of commissary at NCCC exceeded the cost of commissary at the Idaho prisons. *See* Complaint, p. 9. There is no evidence that Plaintiff, or any other Idaho inmate housed at NCCC, was required to pay more than an inmate from Texas or any other state. Additionally, "[i]nmates have no federal constitutional right to be able to purchase items from a commissary." *Hopkins v. Keefe Commissary Network Sales*, 2007 WL 2080480, *5 (W.D.Pa. 2007) (citations omitted). Nor does an inmate have a constitutionally protected interest in purchasing items from the commissary as cheaply as possible. *See, e.g., French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980) ("We also reject French's contention that he and fellow inmates have a constitutionally protected interest in buying food as cheaply as possible."); *Bennett v. Sheahan,* 1999 WL 967534, *4 (N.D.Ill. 1999) ("Commissary prices implicate no constitutional rights."). Plaintiff has failed to

state a claim based upon commissary privileges and, therefore, this aspect of Plaintiff's Complaint must be dismissed.

### e.      Access to Natural Light or Windows.

Plaintiff alleges that NCCC has no natural light or windows in the inmate living areas. *See* Complaint, p. 9.   Notably, there is no allegation that Plaintiff was deprived of natural light. According to the Complaint, inmates were not strictly confined to their cells and were allowed outdoor recreational time. *See id.*, at pp. 9 (noting that most inmates spend 20 plus hours in heir cell) and 13 (noting that inmates allowed outdoor recreation).   Plaintiff's allegations fail to rise to the level of cruel and unusual punishment and this aspect of Plaintiff's Complaint should, therefore, be dismissed. *See Hampton v. Ryan*, 2006 WL 3497780, *14 (D.Ariz. 2006) (granting summary judgment to defendants on plaintiff inmate's Eighth Amendment claim based upon not being allowed sufficient direct sunlight where plaintiff inmate received six hours per week of outdoor recreational activity).

### f.      Hobbycraft and Music Privileges.

Plaintiff alleges that unlike the Idaho state prisons NCCC did not allow hobbycrafts and provided no music privileges. *See* Complaint, p. 9.  "There are no precedential cases providing that denial of hobbycraft or other nonessential recreational privileges as a form of legitimate punishment violates the Constitution." *Fox v. Blades*, 2006 WL 1006802, *1 (D.Idaho 2006) (holding that the denial of access to hobbycraft items as a form of punishment did not violate the Eighth Amendment). Moreover, there is no evidence, nor does Plaintiff allege,  that other inmates at NCCC were provided with greater hobbycraft opportunities.  Because there is no constitutional right to engage hobbycrafts or music while incarcerated, this aspect of Plaintiff's claim must necessarily fail as a matter of law.

g.      **Leisure Library.**

Plaintiff alleges that NCCC has a small collection of used books for inmates to read. *See* Complaint, pp. 9-10. "The regulation of inmates' access to published materials, newsletters, newspapers, and the censorship of these materials, is governed by the constitutional principles generally applicable to the regulation of inmates' mail." 60 Am.Jur.2d, Penal and Correctional Institutions, § 62, p. 938. The arbitrary denial of access to published materials may violate an inmate's First Amendment Rights. *See Golden v. McCaughtry*, 915 F.Supp. 77 (E.D. Wis. 1995).

Here, Plaintiff has not alleged that the reading materials are censored in any way or that they were arbitrarily denied to him. Instead, Plaintiff merely complains of the selection of materials offered. There is no authority supporting Plaintiff's contention that a leisure library should be stocked with a plethora of new reading materials of Plaintiff's liking. Further, there is no evidence, nor does Plaintiff allege, that other inmates were provided with reading materials other than those which are provided for in the facility's leisure library. Plaintiff has failed to plead a constitutional violation and thus this claim must be dismissed as a matter of law.

h.      **Access to the Courts and a Legal Library.**

Plaintiff complains that NCCC has an insufficient legal library. *See* Complaint, p. 10. There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180 (1996). State actors have no duty to assure that prisoners can litigate claims effectively once they have been raised in court. *Id.* As noted by one court, "The right to access, goes no further than access." *Shidler v. Moore*, 409 F.Supp.2d 1060, 1070 (N.D. Ind. 2006). A plaintiff must

demonstrate that the alleged deficiencies in the prison's law library hindered his ability to pursue a claim. *See Lewis*, 518 U.S. at 351, 116 S.Ct. at 2180.

Plaintiff acknowledges that NCCC has a legal library, but alleges that the materials are minimal. *See* Complaint, p. 10. However, filing this action in and of itself establishes that Plaintiff has access to the Courts, thus satisfying *Lewis*. Moreover, Plaintiff's allegations are conclusory and fail to demonstrate how the library was insufficient. Finally, Plaintiff has failed to show that his position as a litigant was prejudiced as a result of NCCC's library resources. *See Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989) (an inmate must demonstrate "actual injury", i.e., "some specific instance in which an inmate was actually denied access to the courts."); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (upholding district court's dismissal of plaintiff prisoner's claim that prison officials denied him access to the courts, holding that a showing of actual injury is required in order to avoid adjudication of trivial claims of deprivation). Consequently, this aspect of Plaintiff's Complaint should be dismissed as a matter of law for failing to plead a valid constitutional violation.

### i.    Educational, Vocational and Rehabilitation Opportunities.

Plaintiff states that NCCC provided few classes and those that were offered were ineffective. *See* Complaint, p. 11. "There is no constitutional right to rehabilitation or vocational programs; idleness and a lack of programs do not violate the Constitution." *Johnson v. Galli*, 596 F.Supp. 135, 139 (D.C.Nev. 1984) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1254-1255 (9th Cir. 1982)). "The weight of authority is that prisoner rehabilitation, education, and vocational training programs do not rise to the level of federally protected rights; but rather, fall into discretionary authority left to the prison administrators." *Scott v. Johnson*, 1986 WL 20797, *2 (D.Utah 1986) (citation omitted).

Hence, Plaintiff is not entitled to rehabilitation, educational, or vocational programs and, therefore, this aspect of Plaintiff's Complaint must be dismissed.

### j.      Recreational and Outdoor Opportunities.

Plaintiff claims that the NCCC cut back outdoor recreation time in half to two hours per day. *See* Complaint, p. 11.  Plaintiff offers no evidence that he was denied a reasonable opportunity to exercise in his cell or that he was denied the opportunity to exercise in the recreation yard.  Plaintiff has no constitutional right to outside recreation opportunities beyond the two hours he was afforded. *See, e.g., Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995) ("administrative segregation, even in a single cell for twenty-three hours a day, is within the terms of confinement ordinarily contemplated by a sentence"); *see also Hampton*, 2006 WL 3497780 at *14.   The recreational and outdoor opportunities provided to Plaintiff were constitutionally sufficient and, as a result, this claim must be dismissed.

### k.      Medical and Psychiatric Treatment.

Plaintiff alleges that "many inmates have been removed from their prescribed medications in order for GEO Inc. to minimize their costs" and also complains that there is not enough psychiatric care and counseling.  Complaint, pp. 11-12.  The Complaint contains no allegation that Plaintiff has not received proper medical or psychiatric treatment.  Nonetheless, as previously noted, and as can be argued for each and every one of Plaintiff's claims, there exists no connection between these allegations and these Defendants.  A person cannot be held liable under §1983 unless the person was personally involved in the alleged wrongdoing.  *See Hansen* and *Ledbetter, supra* (plaintiff must show affirmative link between constitutional deprivation and either the defendant's personal participation, his exercise of control or direction, or his failure to supervise).  A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of

which he complains by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. *Id., see also Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996). Further, to state a claim under §1983 for deprivation of medical treatment in violation of the Eighth Amendment, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed2d. 251 (1976).

Plaintiff must prove that these Defendants deprived him of necessary medical treatment or that they were deliberately indifferent to his medical needs. *See Goldstein v. Flament*, 167 Fed.Appx. 678, 680, 2006 WL 379013, *1 (9th Cir. 2006) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (noting inmate must satisfy both objective and subjective components)). The Complaint, however, contains no allegations that these Defendants deprived Plaintiff of necessary medical treatment of that they were deliberately indifferent to his medical needs. To the extent that Plaintiff contends he should have received different treatment, his claim fails as a matter of law. *See Goldstein, supra*, (citing *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996) (noting a "difference of medical opinion" is insufficient as a matter of law to show deliberate indifference)). "Additionally, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to 'that which may be considered merely desirable.'" *Williams v. O'Brien*, 2007 WL 1112701, *8 (W.D.Va. 2007) (quoting *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)).

Plaintiff fails to allege any injuries that he personally has suffered as a result of any of these Defendants' alleged conduct nor are there any allegations that amount to deliberate indifference. As such, this aspect of Plaintiff's Complaint must be dismissed as a matter of law.

I.        **Food and Clothing.**

Plaintiff complains that NCCC provided food at a substandard level compared to Idaho, and that NCCC did not provide inmate laborers with proper foot-wear. *See* Complaint, p. 12. Plaintiff does not complain that the conditions at NCCC are different for Texas and Idaho inmates; rather he alleges that the food at NCCC is of lesser quality than compared to Idaho facilities. Hence, there are no allegations that NCCC treated the inmates differently.

Generally, restrictions on inmates' diets do not violate the inmate's constitutional rights so long as the basic nutritional needs of prisoners are met. *See Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980) (citations omitted). The Complaint is devoid of any allegations wherein the food service at NCCC amounted to a substantial risk of harm. There is no indication that the prisoner diet at NCCC failed to meet the nutritional needs of the inmates.

Plaintiff states that "inmates report that the kitchen falls below required sanitation standards ...." Complaint, p. 12. Notably, Plaintiff's allegations are not based upon personal knowledge nor is there any indication as to what standards Plaintiff refers. Moreover, it does not appear that Plaintiff was provided allegedly improper foot-wear, but rather other inmates. Further, there are no allegations that Plaintiff was injured as a result of the alleged unsanitary conditions or improper foot-wear nor is there any indication that these Defendants had actual knowledge of the allegations and exhibited a deliberate indifference towards a serious and apparent risk to Plaintiff. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 1979 (1994) (there must be a showing that prison officials had actual knowledge of the inhumane or unsanitary conditions and know that a substantial risk of serious harm may result). On several different levels this aspect of Plaintiff's §1983 claim must fail as a matter of law.

      **m.**    **Due Process Requirements for Discipline Hearings.**

Plaintiff complains that the NCCC does not hold fair disciplinary hearings. *See* Complaint, p. 12. In support of this claim, Plaintiff merely references what appears to be a fellow inmate's experience with NCCC's disciplinary procedures. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974). Plaintiff presents no allegation that he was injured as a result of NCCC's disciplinary procedures. Similarly, Plaintiff fails to assert any allegations connecting these Defendants to this claim. As such, this aspect of Plaintiff's Complaint must be dismissed as a matter of law.

**B.**    **Plaintiff's Requests for Injunctive Relief Should Be Dismissed as Moot.**

Plaintiff requests injunctive relief in the form of: (1) an order requiring the Idaho Department of Correction move the Idaho prisoners from the NCCC to more "appropriate housing that offers a similar degree of custody, care and protection to that of instate Idaho prisoners"; and (2) an order requiring the Idaho Department of Correction to "implement a policy that better protects inmates in need of protective custody." Complaint, p. 17. When a prisoner is moved from a prison, however, his action typically becomes moot as to the conditions at that particular facility. *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001) (citation omitted). For example, in *Johnson v. Moore*, the plaintiff complained about the his conditions of confinement in a Washington state correctional facility. 948 F.2d 517, 519 (9th Cir. 1991). But before the court could render a decision on the plaintiff's claims, he was transferred to a federal correctional facility in Washington. *Id.* The *Johnson* court held that because the plaintiff had demonstrated no reasonable expectation of returning to the Washington state facility, his claims for injunctive relief relating to the state facility's policies were moot. *Id.*; *see also Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995) ("Since the district court granted

injunctive relief in this case, [the plaintiff] has been transferred from Calipatria to another California state prison.  An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action.").

Here, it is undisputed that Plaintiff and the other Idaho prisoners housed at the NCCC were transferred to two other Texas state correctional facilities, the Bill Clayton Detention Center and the Dickens County Correctional Center beginning in July 2006.  Plaintiff has since been transferred back to Idaho.  Consequently, Plaintiff's claims for injunctive relief are moot and should, therefore, be dismissed as a matter of law.

### IV.  CONCLUSION

Wherefore, based upon the foregoing, Plaintiff's allegations are legally insufficient and fail to state a claim upon which relief can be granted.  Therefore, Defendants respectfully request the Court GRANT their Motion to Dismiss in all respects and accordingly dismiss Plaintiff's Complaint with prejudice.

DATED this _____ day of November, 2007.

BRASSEY, WETHERELL, CRAWFORD & GARRETT

By_____
      Andrew C. Brassey, Of the Firm
      Attorneys for Defendants Thomas Beauclair, Sharon
      Lamm, and Ofelia Alvarado

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of November, 2007, I served a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), F.R.C.P. upon each of the following individuals by causing the same to be delivered by the method and to the addresses indicated below:

Leslie Peter Bowcut #68175        ___✓___   U.S. Mail, postage prepaid
ISCI Unit 8                       _____   Hand-Delivered
P.O. Box 14                       _____   Overnight Mail
Boise, Idaho 83707                _____   Facsimile


_____
Andrew C. Brassey