IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LESLIE PETER BOWCUT, | ) | |
| | ) | Case No. CV06-208-S-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| vs. | ) | **AND ORDER** |
| | ) | |
| THOMAS BEAUCLAIR; SHARON LAMM; | ) | |
| and OFELIA ALVARADO; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court is Defendants' Motion for Summary Judgment (Docket

No. 47).  Also pending is Defendants' Motion to Strike several newspaper articles

attached to Plaintiff's Response to Defendants' Motion (Docket No. 50).

Having fully reviewed the record, the Court finds that the facts and legal

arguments are adequately presented in the briefs and record.  Accordingly, in the interest

of avoiding further delay, and because the Court conclusively finds that the decisional

process would not be significantly aided by oral argument, this matter shall be decided on

the record before this Court without oral argument.  D. Idaho L. R. 7.1.  For the reasons

that follow, the Court concludes that Defendants are entitled to qualified immunity.

Therefore, the Court will grant Defendants' Motion for Summary Judgment.  Defendants'

Motion to Strike will also be granted.

**MEMORANDUM DECISION AND ORDER  1**

# BACKGROUND

Plaintiff is an inmate in the custody of the Idaho Department of Correction ("IDOC").  In 2006, the IDOC entered into an agreement (the "Contract") with Newton County, Texas, and GEO Group, Inc., operator of the Newton County Correctional Center ("NCCC"), for the transfer of Idaho inmates to NCCC.  Plaintiff was one of the inmates transferred to NCCC.  He was later transferred back to Idaho.

The contract between the IDOC and the Texas entities was necessitated by this Court's decision in *Balla v. Idaho Board of Correction*, which denied the IDOC's motion to terminate population caps in IDOC facilities.  2005 WL 2403817 (D. Idaho Sept. 26, 2005).  The express purpose of the Contract was to keep Idaho prisons from becoming overcrowded in order to comply with *Balla*.  *See* Contract at 1.

Plaintiff alleges that the conditions at NCCC violated his civil rights because they were substandard as compared with Idaho prisons.  For example, Plaintiff alleges that inmates at NCCC were housed in "cramped 8 man cells and 24 man tanks," were limited to 2-4 hours of recreation time per day in a "small, overcrowded cement court," and were subjected to an inadequate ventilation system.  Complaint (Docket No. 3) at 5.  Plaintiff also alleges that the roof leaked and that black mold was prevalent.  According to Plaintiff, NCCC had only two dilapidated classrooms to hold educational, vocational, and rehabilitation classes, while Idaho prisons had "many legitimate programs [for inmates] to better themselves."  *Id.* at 11.  In his Complaint, Plaintiff alleged violations of the Eighth and Fourteenth Amendments.

**MEMORANDUM DECISION AND ORDER  2**

On June 16, 2008, the Court dismissed Plaintiff's Eighth Amendment claim and his Equal Protection claim comparing NCCC to other Texas prisons, as these claims could only be brought in Texas against Texas officials.  *See* Memorandum Order (Docket No. 44) at 3-4.  The Court allowed Plaintiff to proceed on an equal protection claim comparing the conditions at NCCC to those in Idaho prisons.  *Id.* at 4.  The Court determined that because there is no respondeat superior liability under § 1983, in order to succeed on this claim Plaintiff would have to show that Defendants were each personally involved in the review of NCCC prison conditions and the transfer of prisoners there.  *Id.* at 5.  Plaintiff's claim also depends on his showing that Defendants knew of the poor conditions at NCCC, but transferred Plaintiff there anyway.  *Id.* at 4.

On February 17, 2009, Defendants moved for summary judgment, arguing that (1) they are entitled to qualified immunity, and (2) there is no evidence showing that Defendants knew of poor conditions at NCCC prior to transferring inmates there.  Plaintiff filed a response to the Motion, arguing that certain newspaper articles showed that Defendants knew of the poor conditions at NCCC prior to the transfer.  Defendants then moved to strike these articles.

## DEFENDANTS' MOTION TO STRIKE

Plaintiff's Response to the Motion for Summary Judgment (Docket No. 49-2) ("Response") includes four purported newspaper articles from the Idaho Statesman.  The documents appear to have been printed from the Internet.  The articles contain no bylines or publication dates.

**MEMORANDUM DECISION AND ORDER  3**

Three of the four articles do not mention NCCC at all, but pertain to a different Texas facility.  *See* Response (Docket No. 49-2) at 7, *Our View: Idaho should ensure proper conditions for prisoners*; *id.* at 9, *Texas prison's new operator tells Idaho: Send more inmates*; and *id.* at 10, *ID inmate's mother sues prison company after Texas suicide*.  Therefore, these three articles are irrelevant and will be stricken.

One article contains a short statement about NCCC: "[A] deputy warden resigned after hitting an Idaho inmate in the jaw.  One correctional officer was fired, one demoted, and one disciplined after six Idaho inmates were forcefully cuffed and maced."  Response (Docket No. 49-2), *Questions raised about Texas prison*.

Plaintiff offers this statement for the truth of the matter asserted in the statement, and therefore the statement is hearsay.  *See* Fed. R. Evid. 801(b) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991) (holding that the reporting of a party's statements in several newspaper articles was hearsay).  The only possible exception that could apply is Rule 807, the residual hearsay exception.  This exception allows for admission of a hearsay statement if the statement is evidence of a material fact and is more probative than any other evidence.  Fed. R. Evid. 807.  A statement may not be admitted under this rule unless it contains "circumstantial guarantees of trustworthiness." *Id.  See also Larez*, 946 F.2d at 642-43 (finding sufficient guarantees of trustworthiness where three independent newspapers attributed the same quotations to a party, who was a

**MEMORANDUM DECISION AND ORDER  4**

known declarant and who testified at trial).

The statement at issue here does not contain sufficient indicia of reliability or trustworthiness for two main reasons.  First, the article does not contain a publication date or a byline attributing the article to any one reporter.  Second, the article does not state where the unnamed reporter obtained the information regarding the deputy warden and correctional officers at NCCC.  The residual exception does not apply, and the newspaper article is inadmissible hearsay.  Therefore, the Court will grant Defendants' Motion to Strike all four newspaper articles.

<b>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</b>

**A.      Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477

**MEMORANDUM DECISION AND ORDER  5**

U.S. 242, 247-48.  Material facts are those that may affect the outcome of the case.  *See id.* at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence, but may simply point out the absence of evidence to support the non-moving party's case.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his or her favor.  *Id.*  The non-moving party must go beyond the pleadings and show by affidavits or by discovery or disclosure materials that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(c).  *See also Celotex*, 477 U.S. at 324.

**B.     Section 1983 Standard**

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute.  To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law.  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).[1]

---

[1] The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

**MEMORANDUM DECISION AND ORDER  6**

Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

**C.      Defendants Are Entitled to Qualified Immunity.**

1.      Qualified Immunity Standard

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). On the other hand, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights.  *Id.*  True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A qualified immunity analysis consists of two prongs: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right"; and (2) whether that right was clearly established.  *Saucier v. Katz*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S.

42 U.S.C. § 1983.

**MEMORANDUM DECISION AND ORDER  7**

226, 232 (1991)).  Addressing the two prongs of the test in this sequence is often beneficial, but it is not mandatory.  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

To determine whether a right was clearly established, courts turn to Supreme Court and Ninth Circuit law existing at the time of the alleged act.  *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996).   In the absence of binding precedent, the district courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established.  *Id.*

The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. at 201.  For the law to be clearly established, "[t]he contours of the right" must be sufficiently clear that a reasonable official would understand that his conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635 (1987).  It is not necessary that the "very action in question has previously been held unlawful, . . . but it is to say that in the light of preexisting law the unlawfulness must be apparent" to the official.  *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 194-95 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

**MEMORANDUM DECISION AND ORDER  8**

Application of qualified immunity is appropriate where "the law did not put the [defendant] on notice that his conduct would be clearly unlawful." *Saucier*, 533 U.S. at 195. However, if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is inappropriate. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). When a § 1983 defendant makes a properly supported motion for summary judgment based on qualified immunity, the plaintiff has the obligation to produce evidence of his own; the district court cannot simply assume the truth of the challenged factual allegations in the complaint. *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

    2.    <u>Treating transferred inmates differently from Idaho-based inmates did not violate the Equal Protection Clause.</u>

Under the first prong of the qualified immunity analysis, the Court must determine whether Defendants violated Plaintiff's constitutional rights.   Plaintiff asserts his claims under the Equal Protection Clause of the Fourteenth Amendment.  Prisoners are not a suspect or quasi-suspect class.  As such, the relevant inquiry in an equal protection analysis is whether the IDOC's action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827, F.2d 599, 602 (9th Cir. 1987).  Under this rational basis test, the inmate would only prevail if he is similarly situated with persons who are treated differently by the IDOC, and the IDOC has no rational basis for the dissimilar treatment.  Even where similarly-situated

**MEMORANDUM DECISION AND ORDER  9**

persons are treated differently by the state, however, state action is presumed

constitutional and "will not be set aside if any set of facts reasonably may be conceived to

justify it." *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993).  Absent evidence of

invidious discrimination, the federal courts should defer to the judgment of the prison

officials.  *Id.* at 272.

 The Ninth Circuit has not determined whether an equal protection violation occurs

when a transferred inmates at the receiving prison is treated differently from those

inmates remaining at the transferring prison.  *See Seelye v. Stephens*, 1992 WL 337674,

*1 (9th Cir. Nov. 17, 1992) (unpublished) ("We express no view as to whether Seelye is

entitled . . . to require Montana prison officials to abide my Minnesota law in handling his

mail.").  The question has been addressed by other courts, however.  In *Stewart v.

McManus*, 924 F.2d 138, 142 (8th Cir. 1991), the plaintiff was a Kansas inmate who was

transferred to an Iowa prison as a result of an Interstate Corrections Compact.  The

plaintiff argued that equal protection demanded that all Kansas inmates be treated the

same, regardless of whether they were held in Kansas or in Iowa.  *Id.*  The Eighth Circuit

rejected this argument.  The Interstate Corrections Compact required that transferred

inmates receive the same treatment as inmates of the *receiving* state.  Therefore, all

inmates physically held in the Iowa penitentiary had to receive the same treatment, which

did not need to be similar to the treatment received by inmates remaining in Kansas.  *Id.*

The court held that the plaintiff's equal protection rights were not violated simply because

he was treated differently from other inmates remaining in Kansas.  *Id.*

**MEMORANDUM DECISION AND ORDER  10**

The Seventh Circuit reached a similar result in *Johnson v. Barry*, 815 F.2d 1119 (7th Cir. 1987). There, the plaintiff was a District of Columbia inmate who was transferred to a federal prison in Illinois. *Id.* at 1120. The plaintiff argued that he was entitled to the same disciplinary rules and procedures as those in place in the District of Columbia prison. *Id.* Because no suspect classification was involved, the court undertook a rational basis inquiry, holding that there were "rational reasons to discipline prisoners in a given facility according to a uniform set of rules and to discipline District of Columbia offenders differently according to the rules in effect at their respective paces of confinement." *Id.* at 1121.

Uniformity within an institution is a legitimate correctional goal, and providing the same treatment and applying the same rules and programs to all prisoners within a given institution is rationally related to achieving that goal. Therefore, Plaintiff's equal protection rights were not violated by his receiving the same treatment as other NCCC inmates, even if that treatment was different from that received by inmates remaining in Idaho.

Additionally, there is no evidence that Defendants knew of any poor prison conditions at NCCC prior to Idaho inmates being sent to Texas. The Contract requires that NCCC be operated according to various operating standards, including all "federal, state, and local law and court orders," the National Commission on Correctional Health Care Standards, and the American Correctional Association Standards for Adult Correctional Institutions. Contract, §§ 1.2, 4.1. Thus, Defendants had reason to believe

**MEMORANDUM DECISION AND ORDER  11**

that the treatment that inmates received at NCCC was in line with these national standards.

The discovery responses provided by Plaintiff do not alter this fact.  Plaintiff argues that three responses to interrogatories show that Defendants knew of the conditions at NCCC before they transferred inmates there.  First, Defendants stated in their responses that three non-Defendants conducted a site visit to NCCC.  Response at 3. However, this does not show that these particular Defendants knew of any poor conditions at NCCC.  As stated earlier, there is no respondeat superior liability under § 1983.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Second, Defendant Beauclair stated that he reviewed recommendations regarding NCCC and signed the Contract on behalf of the IDOC.  Response at 4.  Again, this does not show that Defendant Beauclair knew of any poor conditions at NCCC; he simply reviewed the recommendations of others.  Third, Defendant Alvarado accompanied the transferred inmates to NCCC in March of 2006 and "did hear some Idaho inmates express general concerns over being sent to Texas."  *Id.*  However, this does not show that Defendant Alvarado knew of poor conditions at NCCC *prior* to the transfer.

For the foregoing reasons, Plaintiff's equal protection rights were not violated by being subject to different treatment and conditions as the inmates remaining in Idaho.

    3.    <u>A reasonable official would have believed that his or her conduct was lawful.</u>

As explained above, the Ninth Circuit has not determined whether Equal

**MEMORANDUM DECISION AND ORDER  12**

Protection demands that transferred inmates receive the same treatment as the inmates remaining at the transferring prison.  The federal cases that have addressed the issue have determined that prisoners need only be treated the same as other prisoners in that same institution.  Therefore, there was no clearly established Equal Protection right for Plaintiff to receive the same treatment, rules, and programs as those inmates remaining in Idaho.

A reasonable official in Defendants' position would have believed that his or her conduct was lawful.  The Idaho Interstate Corrections Compact states that "[a]ll inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the *receiving state* as may be confined *in the same institution*."  Idaho Code § 20-701, Article IV, subsection (e) (emphasis added).  Further, the Contract requires the treatment of Idaho prisoners at NCCC to be the same as the treatment of Texas prisoners at NCCC.  Contract § 3.1.2 ("The management of STATE inmates by the CONTRACTOR shall be consistent with the management of other inmates at the Facility and in accordance with Operating Standards.").  Because of these statutory and contractual requirements, a reasonable official would have believed that treating transferred prisoners the same as other inmates at NCCC, but differently from those inmates remaining in Idaho, was lawful.  Therefore, Defendants are entitled to qualified immunity on this ground as well.

## CONCLUSION

Defendants are entitled to qualified immunity for two reasons.  First, Defendants

**MEMORANDUM DECISION AND ORDER  13**

did not violate Plaintiff's equal protection rights by providing for treatment, rules, and programs for inmates remaining in Idaho that were not the same as those provided to inmates at NCCC.  Second, even if Plaintiff's constitutional rights had been violated, it was not clearly established that a transferred prisoner must receive the same treatment, rules, and programs as prisoners remaining in the transferring state.  Given the assurances of the Interstate Corrections Compact and the Contract itself, a reasonable official would have believed that treating transferred inmates differently from those remaining in Idaho, but the same as other inmates at the receiving institution, was lawful.  Therefore, Defendants' Motion for Summary Judgment will be granted.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion to Strike (Docket No. 50) is GRANTED.  The four purported newspaper articles attached to Plaintiff's Response to the Motion for Summary Judgment (Docket No. 49-2, pages 7-10) are STRICKEN.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 47) is GRANTED.  Plaintiff's Complaint is DISMISSED with prejudice.

**MEMORANDUM DECISION AND ORDER  14**



DATED: **July 23, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER  15**